# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**CASE NO. 17-20303-CIV-MARTINEZ/GOODMAN**

ELENA YAMILE FARAH, as
Personal Representative of the
ESTATE OF LUIS FARAH,

      Plaintiff,

v.

THE GUARDIAN INSURANCE & ANNUITY
COMPANY, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO REMAND

      The remand motion before the Undersigned raises three issues. The first issue is aptly illustrated by Fleetwood Mac's 1979 song, *Sisters of the Moon*, in which iconic singer Steve Nicks musically explained: "So we make our **choices** / When there is no choice / And we listen to their voices / Ignoring our own voice."[1] The Undersigned must decide a similar conundrum here under the voluntary-involuntary rule to removal: whether a case becomes removable when a plaintiff grudgingly *chooses* to concede the merits of a motion to compel arbitration, rather than present a fruitless opposition, resulting in an agreed order dismissing a nondiverse defendant. In other

---

[1] FLEETWOOD MAC, *Sisters of the Moon, on* TUSK (Warner Bros. 1979) (emphasis added).

words, the issue is whether the plaintiff's non-opposition is a "voluntary act" (i.e., the result of a choice) akin to a voluntary dismissal or settlement, which makes the case removable, or an "involuntary act" akin to an involuntary dismissal following an adverse ruling on the merits, which does not.

The second issue concerns the fraudulent-joinder exception to the voluntary-involuntary rule. Specifically, if plaintiff's non-opposition was "involuntary," which would normally bar removal, then the question is whether removal was nonetheless proper because plaintiff fraudulently joined the nondiverse defendant to eliminate diversity jurisdiction.

The third issue is whether the plaintiff removed the case within the proper time limits. The answer to this question will turn on when that deadline began to run. If it ran from when the removing defendant was served with the initial pleading, then removal was untimely. But if the deadline ran from the date of the agreed dismissal order, then removal was timely.

Plaintiff Elena Yamile Farah, as personal representative of the Estate of Luis Farah, moves to remand this case to state court. [ECF No. 11]. Defendant Guardian Insurance & Annuity Company, Inc. ("GIAC") removed the case to federal court after the state court entered an agreed order dismissing other defendants, including a nondiverse defendant, who had moved to compel arbitration before the Financial

Industry Regulatory Authority ("FINRA"). Plaintiff agreed to the dismissal after concluding that she had no bona fide opposition to the motions to compel.

Plaintiff now seeks to send the case back to state court by arguing that her agreement to a dismissal order was not a "voluntary act" under the meaning of the voluntary-involuntary rule. [ECF No. 11]. GIAC filed an opposition response, arguing that the agreed dismissal order was indeed a "voluntary act" under the rule, or that, alternatively, Plaintiff fraudulently joined the dismissed defendants to eliminate diversity jurisdiction, which is an exception to the voluntary-involuntary rule. [ECF No. 16]. Plaintiff filed a reply. [ECF No. 17]. The parties also filed supplemental briefing on the timing of removal based on the Undersigned's instructions. [ECF Nos. 27; 30–31].

United States District Judge Jose E. Martinez referred the remand motion to the Undersigned for a Report and Recommendations. [ECF No. 12].

For the reasons stated below, the Undersigned finds as follows. First, Plaintiff's non-opposition to the motions to compel arbitration was not a "voluntary act" under the voluntary-involuntary rule, so the resulting agreed dismissal order did not convert the state court dispute into a removable action. Second, the fraudulent-joinder exception to the voluntary-involuntary rule is inapplicable where a valid cause of action may exist against a defendant but the plaintiff is precluded by an arbitration clause from bringing that action in state court. Third, for the sake of completeness, and

to the extent the District Court disagrees with the Undersigned's first two conclusions, removal was timely.

Therefore, the Undersigned respectfully **recommends** that Judge Martinez **grant** the Plaintiff's remand motion and **remand** this case to state court.

## I.     Background

On September 1, 2016, Plaintiff sued GIAC, Alejandro Mendieta, and LPL Financial, LLC in state court. [ECF No. 1-2]. The claims revolve around supposedly improper withdrawals taken from the decedent Luis Farah's annuity contracts. [ECF Nos. 1-2; 1-6]. The original and amended complaints included as exhibits copies of the decedent's LPL account agreement. [ECF Nos. 1-3, p. 7; 1-6, p. 65]. The account agreement contained an arbitration provision, which stated, among other things: "All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." [ECF Nos. 1-3, p. 18; 1-6, p. 75].

On October 27, 2016, Mendieta and LPL moved to compel arbitration and stay the action. [ECF Nos. 1-7, pp. 28, 42; 1-13, pp. 62, 67]. In the remand motion, Plaintiff's counsel concedes that after analyzing the motions to compel arbitration, counsel "made a professional judgment that contesting arbitration would be futile and thus conceded to the relief sought and ultimately agreed to the entry of an order compelling arbitration." [ECF No. 11, p. 4].

On January 17, 2017, the state court entered an agreed order that dismissed without prejudice the claims against Mendieta and LPL. [ECF No. 1-14, p. 68]. The order also memorialized the parties' agreement that FINRA's dispute resolution forum had jurisdiction over the dispute with Mendieta and LPL. [ECF No. 1-14, p. 69]. The order then stated that the action would continue against the sole remaining defendant, GIAC. [ECF No. 1-14, p. 68].

On January 24, 2017, GIAC removed the case to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. [ECF No. 1]. Pertinent here, GIAC alleged that when Plaintiff voluntarily agreed to dismiss Mendieta (a nondiverse party) and LPL from the state court action, it resulted in complete diversity between the parties. [ECF No. 1, ¶ 17]. Alternatively, GIAC alleged that if the dismissal order was deemed "involuntary," removal was still proper because Plaintiff fraudulently joined Mendieta and LPL in the action to eliminate diversity jurisdiction. [ECF No. 1, ¶ 18] As the basis for its view that a fraudulent joinder occurred, GIAC argued that Plaintiff had no viable cause of action against Mendieta or LPL in light of the mandatory arbitration provision in the LPL account agreement. [ECF No. 1, ¶¶ 19–24]. Finally, GIAC alleged that it timely removed this case by filing its notice of removal within 30 days from the dismissal order, which marked the "triggering event" for the deadline to remove under 28 U.S.C. § 1446. [ECF No. 1, ¶ 9].

In her remand motion, Plaintiff argues that the voluntary-involuntary rule bars removal of this case because the state court's dismissal resulted not from her voluntary actions, but the nondiverse defendant's action in moving to compel arbitration. [ECF No. 11, p. 4]. Plaintiff admits that she conceded to the relief sought in the motion to compel arbitration based on her professional judgment. [ECF No. 11, p. 4]. But Plaintiff argues that, regardless of her concession, the dismissal's catalyst was the other side's motions, and not her lack of opposition to them, thereby making the dismissal involuntary. [ECF No. 11, pp. 5–6].

Plaintiff also argues that LPL and Mendieta could have waived arbitration. [ECF No. 11, p. 6]. But after LPL and Mendieta elected to arbitrate, "negotiations with the three defendants, independent analysis, and the Motion to Compel" made it clear to Plaintiff that "keeping all three defendants in the same forum would be impossible." [ECF No. 11, p. 6].

Plaintiff also contends that she did not fraudulently join the nondiverse defendant, Mendieta, to defeat diversity jurisdiction. [ECF No. 11, p. 8]. Plaintiff argues that she sufficiently stated causes of action for negligence and breach of fiduciary duty against Mendieta, and emphasizes that the order compelling arbitration did not find otherwise -- it simply dismissed those claims without prejudice so that they could be submitted to arbitration. [ECF No. 11, pp. 8–10]. Plaintiff also argues that pursuing those causes of action against Mendieta would not have been a sham because, despite

the arbitration agreement, she made a "good faith attempt" to sue all three parties in one forum [ECF No. 11, pp. 10–11].

 In its opposition response, GIAC argues that Plaintiff's concession *was* a voluntary act because Plaintiff knew that any resistance to arbitration was pointless. [ECF No. 16, p. 3]. GIAC also argues that Plaintiff's arguments about why she agreed to the entry of the dismissal order are irrelevant given that she ultimately agreed to the dismissal. [ECF No. 16, p. 5].

GIAC also argues that Plaintiff did fraudulently join Mendieta and LPL in state court because the mandatory arbitration provisions (which Plaintiff was aware of) did not give Plaintiff a viable cause of action in state court. [ECF No. 16, pp. 6–7]. GIAC further argues that because of the arbitration provision, Plaintiff could not have maintained her state court claims against Mendieta or LPL in good faith. [ECF No. 16, pp. 7–8].

## II.  Legal Standard

Under section 1332, federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and that are between "citizens of different States[.]"§ 1332(a). Section 1441 further authorizes, with certain exceptions inapplicable here, the removal of "any civil action" in which "the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a).

Removal must normally occur "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" § 1446(b). There is an exception, however, "if the case stated by the initial pleading is not removable[.]" § 1446(b)(3). In such a case, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

As a general matter, removal statutes are strictly construed, and where the parties clash about jurisdiction, uncertainties are to be resolved in favor of remand. *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). The removing party bears the burden of showing the existence of federal jurisdiction. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).

III.    **Analysis**

A.  **Voluntary-Involuntary Rule**

The United States Supreme Court created the voluntary-involuntary rule more than a century ago. *See, e.g., Whitcomb v. Smithson*, 175 U.S. 635, 638 (1900); *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281 (1918). The rule has since survived the codification of section 1446 and is still followed by the Eleventh Circuit. *Pretka v. Kolter City Plaza II,*

*Inc.*, 608 F.3d 744, 761 (11th Cir. 2010); *Insinga v. LaBella*, 845 F.2d 249, 252 (11th Cir. 1988). The rule provides that "only a voluntary act by the plaintiff may convert a non-removable case into a removable one." *Pretka*, 608 F.3d at 761. Thus, "if the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed." *Insinga*, 845 F.2d at 252; *see also Pretka*, 608 F.3d at 761 (explaining "that an initially non-removable case cannot be converted into a removable one by evidence of the defendant or by an order of the court.") (internal quotation marks omitted).

In *Insinga*, the Eleventh Circuit established that the voluntary-involuntary rule has dual purposes: (1) ensuring the finality of state-court proceedings and (2) promoting a plaintiff's right to choose a litigating forum. 845 F.2d at 253. The rule's duality became important when analyzing a removing party's argument that removal was justified following a plaintiff's failure to appeal an adverse summary judgment order. Specifically, while the removing party conceded that the summary judgment was not a "voluntary act" under the rule that created complete diversity, it argued that removal was still proper because the rule's first justification -- finality -- was not present. *Id.* at 252. As support, the removing party relied on a Second Circuit decision that stood for the proposition that a plaintiff's failure to appeal a dispositive order "constituted the functional equivalent of a 'voluntary' dismissal" given that the

voluntary-involuntary rule was simply meant ensure the finality of state court proceedings. *Id.* (citing *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n. 2 (2d Cir. 1980)).

The Eleventh Circuit rejected that argument and declined to follow *Quinn*'s reasoning. The Court explained that "finality" was not synonymous to "voluntariness." *Id.* at 252–53. Moreover, the Court noted that apart from the issue of finality/appealability, "[t]here also appears to be a policy favoring a plaintiff's right, absent fraudulent joinder, to determine the removability of his case." *Id.* at 253.

Decisions in this District have recognized this second policy behind the voluntary-involuntary rule. *See Chusid v. Swire Pac. Holdings, Inc.*, No. 09-23368-CIV, 2010 WL 11505092, at *2 (S.D. Fla. July 16, 2010) (explaining that "[t]he second policy consideration behind the voluntary/involuntary rule is the right of the Plaintiff to determine whether the case should be removed."); *Katz v. Costa Armatori, S.p.A.*, 718 F. Supp. 1508, 1509–10 (S.D. Fla. 1989) (same).

But the parties have not presented, and the Undersigned did not find, any decisions from this District applying the voluntary-involuntary rule under the present circumstances -- where a plaintiff conceded that a dispositive motion had merit and agreed to an order dismissing a nondiverse defendant.[2]

---

[2]    *Marsicano v. Home Depot USA, Inc.*, No. 09-60208-CIV-ALTONAGA, 2009 WL 899968 (S.D. Fla. Mar. 30, 2009), which GIAC relies on, does not address that issue. The case's procedural history does show that the defendant removed the matter following an agreed order that dismissed a nondiverse defendant. *Id.* at *1. But that was not the issue on remand; rather, the plaintiff's sole argument for remand was that he intended

Several district courts outside this state, however, have addressed the same issue or similar issues. Specifically, many cases have found that when a plaintiff does not oppose a dispositive motion, that inaction is not functionally equivalent to a "voluntary act" under the voluntary-involuntary rule. *See Sanders v. Arctic Cat, Inc.*, No. 5:15-CV-2286, 2016 WL 1409212, at *3 (N.D. Ohio Apr. 11, 2016) (collecting cases explaining that "[a] voluntary act to abandon a claim must be an affirmative act, not a failure to act."); *Brown v. Caterpillar, Inc.*, No. CIV. 15-02687 WHW, 2015 WL 4598778, at *2 (D.N.J. July 28, 2015) (finding that failure to oppose summary judgment motions was not the same as voluntary dismissal); *Mumfrey v. Anco Insulations, Inc.*, No. CIV.A. 11-2284, 2011 WL 4745626, at *3 (E.D. La. Oct. 7, 2011) (finding that failure to oppose summary judgment did not constitute voluntary act); *Shemp v. Yamaha Corp. of Am.*, 206CV00565KJD-GWF, 2006 WL 2669185, at *4 (D. Nev. Sept. 18, 2006) (finding that failure to file an opposition to motion to dismiss was not an affirmative act sufficient to satisfy the voluntary-involuntary rule); *Pender v. Bell Asbestos Mines, Ltd.*, 46 F. Supp. 2d 937, 941 (E.D. Mo. 1999) (finding that "plaintiff did not consent to the dismissal here merely because her counsel stated he would not appear to oppose the motion [to dismiss]."); *Machinsky v. Johnson & Johnson Med., Inc.*, 868 F. Supp. 269, 270 (E.D. Mo. 1994) (finding that failure to oppose motion to dismiss and suggestion of language in the dismissal order was not functionally equivalent of voluntary dismissal); *Cook v. Pep Boys-Mannie, Moe & Jack,*

---

to join additional nondiverse defendants in the future, so removal was premature. *Id.* at *1. Judge Altonaga rejected that argument. *Id.*

*Inc.*, 641 F. Supp. 43, 45–46 (E.D. Pa. 1985) (finding that plaintiff's failure to oppose a judgment on the pleadings was not functionally equivalent to a voluntarily dismissal).

Furthermore, at least one district court has found that a plaintiff yielding to a winning position on a dispositive motion is akin to a plaintiff simply doing nothing, and thus is not a "voluntary act" per the voluntary-involuntary rule. *See Harrell v. Clarke Power Prod., Inc.*, No. 2:10 CV 70 DDN, 2011 WL 749681, at *4 (E.D. Mo. Feb. 24, 2011). In *Harrell*, the defendant removed the case after the plaintiffs consented to dismissing a nondiverse defendant. The plaintiffs' counsel explained that he "sought to oppose [the] dismissal, but after reviewing the motion, he found no good faith basis for opposing it." *Id.* at *5. The court found that "plaintiffs' counsel's actions might be more appropriately classified as 'not opposing' rather than actually 'consenting,' which would resolve any doubt as to the voluntary/involuntary nature of [the] dismissal." *Id.* The court also reasoned that since the defendant initiated the dismissal, it suggested that the dismissal was not voluntary. *Id.*

Where courts have found that plaintiffs crossed the line into the "voluntary" side of the voluntary-involuntary rule, the plaintiff undertook some affirmative act that was analytically similar to abandoning the claims against the defendant. For instance, in *Hammons v. Ohio Cas. Ins. Co.*, No. Civ. A. 09–30–KS, 2009 WL 997098 (E.D. Ky. Apr. 14, 2009), a case GIAC relies on, after the plaintiff reached a settlement with a nondiverse defendant, the only claim pending against that defendant was one of subrogation by a

co-defendant. The co-defendant, however, waived subrogation and moved to dismiss the nondiverse defendant, resulting in an agreed order. Under those circumstances, the court found that "[a]n agreed order constitutes voluntary dismissal," explaining that "Plaintiffs' desire to object to that dismissal simply to prevent the dismissal from being 'voluntary' is insincere because Plaintiffs have no claim against [the nondiverse defendant] remaining." *Id.* at *1–2.

It should also be noted that the *Hammons* Court relied solely on the "finality" rationale of the voluntary-involuntary rule, *id.* at *1, and the Eleventh Circuit has already established that "finality" is not synonymous to "voluntariness." *Insinga*, 845 F.2d at 252–53. Therefore, whether *Hammons* is even good law in this Circuit is questionable.

Turning to this case, the Undersigned finds that the agreed order dismissing Mendieta, the nondiverse defendant, was not the functional equivalent of a voluntary dismissal or any other "voluntary act" within the meaning of the voluntary-involuntary rule. As *Insinga* instructs, the voluntary-involuntary rule is meant to promote a plaintiff's right to choose a litigating forum. *Id.* at 253. Indeed, there is a "policy favoring a plaintiff's right, absent fraudulent joinder, to determine the removability of his case." *Id.* at 253. Therefore, "if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed." *Insinga*, 845 F.2d at 252.

As the parties recognize, Mendieta had the choice to waive arbitration. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011) ("courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so"). But he did not waive arbitration -- he filed a motion to compel arbitration. Thus, the dismissal resulted from *Mendieta's action* in seeking to compel arbitration, rather than the Plaintiff's decision to not stand in the way. *See Harrell*, 2011 WL 749681, at *5. The Undersigned is persuaded by the authorities holding that Plaintiff's lack of opposition was not the same as a voluntary act of dismissal. *See, e.g., Sanders*, 2016 WL 1409212, at *3. And the Undersigned is further convinced by *Harrell*, which persuasively shows that a plaintiff who concedes a meritorious point does not turn an otherwise involuntary dismissal into a "voluntary act" creating complete diversity.

To find otherwise would send a wrong message to litigants facing meritorious motions in state court. Courts should encourage parties to concede well-taken points. But if such a concession were to be deemed a "voluntary act" that created diversity jurisdiction, then parties would feel pressured to fruitlessly oppose meritorious motions just to avoid removal.

Of course, one may play devil's advocate and say that parties would also be encouraged to bring meritless claims with the knowledge that once the inevitable dispositive motion comes along, they could gracefully concede and avoid removal. But there is already a doctrine designed to prevent such a practice: the fraudulent-joinder

doctrine. As the Eleventh Circuit explained, the plaintiff has a "right, *absent fraudulent joinder*, to determine the removability of his case." *Insinga*, 845 F.2d at 253 (emphasis added). A lack of merit does not necessarily mean fraudulent joinder. *See Pacheco de Perez*, 139 F.3d at 1380–81 ("In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."). Therefore, absent fraudulent joinder, a plaintiff should be able to concede defeat without inviting removal. The Undersigned will address the fraudulent-joinder issue next.

In sum, the Undersigned finds that Plaintiff's non-opposition to the motion to compel arbitration was not a "voluntary act" under the voluntary-involuntary rule, and therefore, the agreed dismissal order did not convert the state court dispute into a removable action.

## B. Fraudulent Joinder

The fraudulent-joinder doctrine is an exception to the voluntary-involuntary rule. *Insinga*, 845 F.2d at 254. Fraudulent joinder normally exists in two situations: (1) where "there was no possibility that the plaintiff could prove a cause of action against the resident defendant[,]" and (2) where "the plaintiff fraudulently pled jurisdictional facts in order to subject that resident defendant to the jurisdiction of the state court." *Id.* A third type of fraudulent joinder -- fraudulent misjoinder -- also exists, and this type occurs "where a diverse defendant is joined with a nondiverse defendant as to whom

there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Arbitration agreements, however, do not constitute a fourth category of fraudulent joinder. *See, e.g., Frank v. Am. Gen. Fin., Inc.*, 23 F. Supp. 2d 1346, 1349 (S.D. Ala. 1998). The *Frank* Court, which looked at that issue from the lens of Eleventh Circuit jurisprudence, rejected the argument that an arbitration provision alone could make a joinder fraudulent and gave five persuasive reasons why:

"First, the mere existence of an arbitration agreement does not divest a court, state or federal, of jurisdiction." *Id.* at 1349. "Second, the existence of an arbitration agreement between a plaintiff and a defendant does not necessarily mean that all of the plaintiff's claims against that defendant are arbitrable under the agreement." *Id.* "Third, [c]ourts, not arbitrators, ordinarily will decide whether or not a particular dispute is arbitrable." *Id.* (quotation marks omitted). "Fourth, even if it were established that the arbitration agreement at issue is otherwise valid and enforceable and that the parties have clearly and unmistakably agreed to submit the arbitrability question itself to arbitration, the right to arbitrate is a waivable right which the defendant may waive intentionally or even negligently[.]" *Id.* at 1350. "Fifth, even an order compelling arbitration does not under the FAA divest the court, state or federal, of jurisdiction." *Id.*

Several district courts have found *Frank* and similar cases to be persuasive on this issue. *See Bullerwell v. Volkswagen Group of Am., Inc.*, No. SA-16-CV-1199-XR, 2017 WL 87065, at *3 (W.D. Tex. Jan. 10, 2017) (relying on *Frank's* rationale and stating, "These reasons have been cited with approval numerous times [] and they justify the same result in this case."); *Cobalt Mining, LLC. v. Bank of Am. N.A.*, No. CIV.A. 3:07-CV-598S, 2008 WL 695887, at *3 (W.D. Ky. Mar. 12, 2008) (citing to *Frank*, among other cases, and stating, "Courts that have considered the issue of whether an arbitration agreement between a plaintiff and a non-diverse defendant renders the joinder of the non-diverse defendant fraudulent have uniformly concluded that the existence of an arbitration agreement does not yield the conclusion that Plaintiff has failed to state a colorable basis for a claim.") (quotation marks omitted); *Koetters v. Ernst & Young LLP*, No. CIV.A. 3:05-19-JMH, 2005 WL 1475533, at *5 (E.D. Ky. June 21, 2005) (citing to *Frank*, among other cases, and stating, "This Court agrees that the existence of an arbitration agreement does not of itself render joinder fraudulent."); *Cure v. Toyota Motor Corp., Inc.*, 248 F. Supp. 2d 594, 596–97 (S.D. Miss. 2003) (explaining that court was "persuaded by the analysis and conclusions set forth in *Frank*" in rejecting argument that nondiverse defendant's citizenship should be ignored because plaintiffs signed binding arbitration agreement with defendant); *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 517 (S.D.N.Y. 2000) ("While *Frank*, of course, is not binding on this Court, its logic is persuasive.").

The Undersigned is also persuaded by *Frank* and the numerous cases adopting its reasoning. GIAC cannot prevail on a fraudulent-joinder theory based solely on the existence of an arbitration provision. *See, e.g., Bullerwell*, 2017 WL 87065, at *3. Yet GIAC's fraudulent-joinder argument is solely based on the arbitration provisions in the LPL account agreement. [ECF Nos. 1, ¶¶ 19–24; 16, pp. 6–8]. At no point does GIAC argue that, notwithstanding the arbitration provision, Plaintiff could not state a cause of action against Mendieta or that Plaintiff maintaining such an action against Mendieta would be a sham. Therefore, GIAC has failed to show that the fraudulent-joinder doctrine justifies its removal of this case.

Notably, GIAC itself finds *Frank* to be persuasive since it relies heavily on that case to argue that removal was timely. [ECF No. 30, pp. 4–5]. GIAC maintains that the five reasons set forth in *Frank* were "contingencies" requiring resolution (and that were resolved by the agreed dismissal order) before removability could be ascertained. [ECF No. 30, p. 5]. But then GIAC goes on to distinguish *Frank* from this case by arguing that "Plaintiff has not and cannot assert a viable cause of action against Mendieta in light of not only the subject arbitration agreement but also the language of the Agreed Order granting the FINRA Dispute Resolution exclusive jurisdiction[.]" [ECF No. 30, p. 4 n. 4].

GIAC's argument fails to persuade for several reasons. First, its premise is wrong. The dismissal order states only that the parties agreed that FINRA has "jurisdiction" over the matter; it did not imbue FINRA with "exclusive jurisdiction"

over the matter. [ECF No. 1-14, pp. 68–69 ("The Parties are in agreement that FINRA Dispute Resolution has jurisdiction over this matter as to [Mendieta and LPL].")].

Second, the dismissal order was based on the arbitration provision itself, and thus cannot constitute a separate basis for finding that Plaintiff fraudulently joined Mendieta to defeat diversity jurisdiction.

Third, parties cannot consent to subject matter jurisdiction in the first place. *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983) ("subject matter jurisdiction cannot be waived or conferred on a court by consent of the parties").

Fourth, the jurisdiction rationale is but one of the persuasive reasons set forth in *Frank* and other similar cases for why the existence of arbitration provisions does not necessarily mean that a party was fraudulently joined. Mendieta could have waived arbitration, for example. *Krinsk*, 654 F.3d at 1200.

To summarize, the Undersigned finds that the fraudulent-joinder exception to the voluntary-involuntary rule does not apply here.

## C. Timing of Removal

In *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, the Eleventh Circuit held that a notice of removal was untimely when it was filed almost six months after the case commenced, but within 30 days from the deposition of a nondiverse defendant. 436 F. App'x 888, 893 (11th Cir. 2011). The defendants argued that it was during the deposition that they first learned of facts contradicting the allegations in the complaint

against the nondiverse defendant. *Id.* at 892. But the *Taylor* Court did not "agree that the deposition was the first time that Defendants could ascertain that the case was removable *on the basis of fraudulent joinder.*" *Id.* (emphasis added). The Court reasoned that since the nondiverse defendant was an employee of the diverse defendant, all could have ascertained the facts adduced at deposition before then -- at the time the action commenced. *Id.*

Other Florida district courts have also found removals untimely where the removing party could have ascertained that a joinder was fraudulent from the initial complaint but failed to remove within 30 days of being served with the complaint. *See Mincey by & through Sims v. Am. Honda Motor Co.*, No. 3:15-CV-847-J-39MCR, 2015 WL 12844400, at *6 n. 11 (M.D. Fla. Aug. 25, 2015) (finding removal untimely when filed within 30 days from amended complaint, but not within 30 days from initial complaint, because nothing changed between the two pleadings, and fraudulent joinder could be ascertained from the first pleading even absent certain details); *Noyes v. Universal Underwriters Ins. Co.*, No. 8:13-CV-3077-T-30TGW, 2014 WL 2111695, at *1 (M.D. Fla. Apr. 30, 2014) (relying on *Taylor*, finding removal untimely when not filed within 30 days from service of process since the fraudulently joined defendant was never a bar to removal at that time); *Layton v. SmithKline Beecham Corp.*, No. 8:05CV2107T27EAJ, 2006 WL 2194498, at *3 (M.D. Fla. Aug. 2, 2006) (finding that because the removing defendant could have ascertained from the complaint that a former co-defendant was fraudulently

joined, the removal notice was untimely since it was not filed within 30 days after service of the complaint). This position is consistent with the greater weight of authority throughout the country. *See* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3732 (4th ed.) (collecting cases).

Here, "if the case stated by the initial pleading [was] not removable," then GIAC could have filed the notice of removal "within 30 days after receipt [], through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). GIAC maintains that it timely removed this case by filing its removal notice within 30 days of the state court dismissing a non-diverse defendant based on the existence of a mandatory arbitration provision. But the Undersigned has already found that the agreed dismissal order was "involuntary" per the voluntary-involuntary rule, and therefore does not create diversity jurisdiction.

In anticipation of this ruling, GIAC maintains that Plaintiff fraudulently joined Mendieta to defeat diversity jurisdiction. At first blush, it would seem that the first time GIAC could have ascertained that the case was removable on the basis of fraudulent joinder was when it was served with Plaintiff's complaint. GIAC's fraudulent joinder argument is based solely on the arbitration provisions in the LPL account agreement. [ECF Nos. 1, ¶¶ 19–24; 16, pp. 6–8]. And Plaintiff attached the account agreement to its initial and amended pleadings. [ECF Nos. 1-3, p. 7; 1-6, p. 65].

But as shown in *Frank* and other similar cases, just because an arbitration provision exists, does not mean that the case is removable. For instance, Mendieta could have purposely or accidently waived the right to arbitrate, even after moving to compel arbitration. So the initial or amended pleadings would not have made the case removable. Neither would the motions to compel arbitration themselves. Had GIAC removed the case at those times, the District Court would likely deem the removal improper because the arbitration provision, standing alone, would not provide a valid reason to disregard Mendieta's citizenship on the basis that he was fraudulently joined. *See, e.g., Bullerwell*, 2017 WL 87065, at *3.

Rather, absent some other facts showing that Mendieta was fraudulently joined, which the record does not reveal, GIAC would need some "voluntary act" from Plaintiff that created complete diversity, like Plaintiff settling the case against Mendieta or voluntarily dismissing him from the case. Thus, if the District Court disagrees with the Undersigned and finds that the agreed dismissal order constituted such "a voluntary act," then removal was timely because it was made within 30 days from that order.

## IV.    Objections

The parties will have 10 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 10

days of the objection.[3] Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on August 1, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record

---

[3]    The deadline for objections and responses are being shortened because the issues are fully briefed.